IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| NICOLE M COSOLA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-23-CV-73-KC |
| | § | |
| ECOHEALTH ALLIANCE et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day, the Court considered Defendant EcoHealth Alliance's Motion to Dismiss ("EcoHealth's Motion"), ECF No. 31, and Defendant United States of America's Motion to Dismiss (the "Government's Motion"), ECF No. 38. For the reasons set forth below, EcoHealth's Motion is **GRANTED** and the Government's Motion is **GRANTED**.

**I. BACKGROUND**

This lawsuit involves Plaintiff Nicole M. Cosola's allegation that Defendants are liable for funding research that led to the creation of the COVID-19 virus, which leaked from a laboratory and ultimately caused the death of Plaintiff's husband, William G. Cosola. *See generally* 2d Am. Compl. ("SAC"), ECF No. 30. The following facts are derived from the SAC and are taken as true for purposes of adjudicating Defendants' Motions. *See Calhoun v. Hargrove*, 312 F.3d 730, 733–34 (5th Cir. 2002) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

The National Institutes of Health ("NIH") and the National Institute of Allergy and Infectious Diseases ("NIAID") are federal agencies headquartered in Maryland. SAC ¶¶ 3–4. Between 2014 and 2019, the United States—through NIH and NIAID—awarded grant funding

to EcoHealth, a New York nonprofit organization that "supports research into coronaviruses." SAC ¶¶ 2, 17. Over the course of those six years, approximately $826,000 of the unspecified total grant to EcoHealth was provided to the Wuhan Institute of Virology ("WIV") as a sub-grantee. SAC ¶¶ 17–18. In 2019, the amount granted to the WIV was roughly $76,000. *Id.* The WIV is a laboratory in Wuhan, China. SAC ¶ 13. Neither NIH, NIAID, nor EcoHealth exercised supervision or control over the WIV's activities. SAC ¶¶ 16, 19.

"At the time" of funding and continuing until at least September 2019, the WIV was performing gain-of-function research with coronaviruses, at facilities with serious biosafety problems. SAC ¶¶ 13, 15, 18. Gain-of-function research involves experiments that aim to make viruses more infectious and more deadly. SAC ¶ 14. Around September 2019, "the COVID-19 virus leaked from the [WIV]," where it had been "created." SAC ¶¶ 13, 22. Sometime later, Plaintiff's husband contracted COVID-19, and on February 21, 2021, he died as a result of his COVID-19 infection in El Paso, Texas.[1] SAC ¶ 20; Resp. Opp. Def. EcoHealth Alliance's Mot. Dismiss 17 ("Resp. EcoHealth"), ECF No. 35.

"At the time [Defendants] funded monies to the [WIV]," Plaintiff alleges that each knew or should have known (1) that the WIV "was conducting research into coronaviruses, including gain of function research"; (2) "that there existed serious biosafety problems at the [WIV]"; and (3) that Defendants "had no oversight" with regard to the WIV's experiments and "no way of knowing how safe the [WIV's] laboratories were." SAC ¶¶ 15, 18.

Plaintiff initiated this lawsuit on February 21, 2023, bringing a common-law negligence claim against EcoHealth. Compl. ¶¶ 10–19, ECF No. 1. On November 7, Plaintiff added a

---

[1] The allegation of the decedent's place of death does not appear in the SAC, but instead, in a response brief. *See generally* SAC; Resp. EcoHealth 17. The Court admonishes Plaintiff's attorney for the omission from the SAC but construes the inclusion in the Response to EcoHealth as a motion to amend the SAC on this point and grants it. *See Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996).

negligence claim against Defendants NIH, NIAID, and the United States (collectively, the "Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401, 2671–80.  SAC ¶¶ 7, 17–24.  EcoHealth moved to dismiss under Rules 12(b)(2) and 12(b)(6).  EcoHealth's Mot. 1.  The Government moved to dismiss under Rules 12(b)(1) and 12(b)(6).  Gov't's Mot. 1, 3–4.  Plaintiff filed a Response to EcoHealth, as well as a Response in Opposition to Defendant United States' Motion to Dismiss ("Response to Government"), ECF No. 40, and a Notice of Addition to the Response to Government ("Supplemental Response"), ECF No. 41.  The Government filed a Reply, ECF No. 42.[2]  EcoHealth did not file a reply brief, and the deadline to do so has elapsed.  W.D. Tex. Local Rule CV-7(e)(2).

## II.     DISCUSSION

### A.     12(b)(1) Standard

Federal courts are courts of limited jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citing *Hashemite Kingdom of Jordan v. Layale Enters., S.A.*, 272 F.3d 264, 269 (5th Cir. 2001)).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *Peoples Nat'l Bank*, 362 F.3d at 336 (citing *Hashemite Kingdom*, 272 F.3d at 270).

A party may challenge a district court's subject-matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  A federal court must consider a Rule 12(b)(1) motion to dismiss before any other challenge because a court must have subject-matter jurisdiction before determining the validity of a claim.  *Moran*

---

[2] The Court has reviewed all of the parties' briefing in detail.  However, the Court declines to reach many of the issues presented.  Accordingly, this Background section omits a description of any factual matter that is not pertinent to the issues decided.

*v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)).  The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (first citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); and then citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

   B.   12(b)(2) Standard

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).  Where, as here, the Court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff need only "present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000)).  The Court "must accept the plaintiff's uncontroverted allegations as true, and resolve in his favor all [factual] conflicts." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

   C.   12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, "the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Calhoun*, 312 F.3d at 733; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed"

factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### D.     Analysis

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)); *see also United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). But "there is no mandatory 'sequencing of jurisdictional issues,'" so when multiple jurisdictional grounds for dismissal are presented, courts may assess them in the order they deem appropriate. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)); *see, e.g.*, *Roland v. Masters*, No. 21-cv-817,

2022 WL 4295365, at *4 (E.D. Tex. Aug. 23, 2022), *adopted*, 2022 WL 4290464 (Sept. 16, 2022).

Both the Government and EcoHealth raise jurisdictional and non-jurisdictional arguments for dismissal. The Government argues that the Court lacks subject-matter jurisdiction under four independent exceptions to the FTCA's waiver of sovereign immunity: (1) the discretionary function exception, 28 U.S.C. § 2680(a); (2) the independent contractor exclusion, 28 U.S.C. § 2671; (3) the private person analogue requirement, 28 U.S.C. § 1346(b); and (4) the foreign country exception, 28 U.S.C. § 2680(k). Gov't's Mot. vii. The Government also argues that Plaintiff has not alleged sufficient facts to demonstrate proximate cause, an element of her negligence claim. *Id.* For its part, EcoHealth argues that the Court cannot exercise personal jurisdiction over Plaintiff's claims against it because it lacks sufficient minimum contacts with the State of Texas. EcoHealth's Mot. 5. EcoHealth also argues that Plaintiff fails to allege sufficient facts to satisfy the duty, breach, and causation elements of her negligence claim. *Id.* at 14.

As stated previously, Plaintiff brings her negligence claim against the Government under the FTCA. "[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994)). "That means a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Id.* at 218 (quoting 28 U.S.C. § 1346(b)(1)). The Court thus exercises its discretion to first consider the Government's argument that Plaintiff has failed to state a negligence claim under Texas law, without which the Court lacks subject-matter jurisdiction as to Plaintiff's claim against the

Government.³  *See, e.g.*, *Calix v. Pope*, Nos. 18-cv-3980, 19-cv-6685, 2023 WL 6385340, at *4 (E.D.N.Y. Sept. 30, 2023) ("[T]he Court can and should address the Government's merits-based argument as a basis to resolve whether the Court has jurisdiction." (citation omitted)).

### 1. The Court lacks subject matter jurisdiction over Plaintiff's claim against the Government.

Ordinarily, when resolving motions to dismiss for lack of subject-matter jurisdiction, courts may receive and consider evidence and, in some cases, even resolve disputes over jurisdictional facts. *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).  However, "when the issue of jurisdiction is intertwined with the merits, district courts should 'deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'" *Id.* (quoting *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020)).  Here, the jurisdictional issue is coextensive with the merits. *See Brownback*, 592 U.S. at 217–18.  Accordingly, the Court assesses whether Plaintiff has stated a negligence claim under the strictures of Rule 12(b)(6), assuming the veracity of Plaintiff's factual allegations. *Calhoun*, 312 F.3d at 733.

Plaintiff's sole underlying cause of action against all Defendants—including the Government—is for negligently funding the WIV's coronavirus gain-of-function research.  SAC ¶¶ 13–24.  Under the FTCA, courts apply "the law of the state where the tort took place." *Najera v. United States*, 926 F.3d 140, 144 (5th Cir. 2019) (citing *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995)).  The Government argues that Maryland law should apply here because the NIH and NIAID are headquartered in Maryland, thus their allegedly negligent funding

---

³ The Court begins with this argument because it obviates the need to consider difficult, unsettled issues implicated by some of the Government's other arguments. *See Sinochem*, 549 U.S. at 436 (holding that when confronted with multiple threshold considerations, "the court properly takes the less burdensome course").

7

decisions were made in Maryland. Gov't's Mot. 12 n.7. Plaintiff appears to assume that Texas law applies, without explaining the basis for her position, much less responding to the Government's argument for the application of Maryland law. *See* SAC ¶ 20 (referencing Texas law); Resp. Gov't 15 (same); Resp. EcoHealth 20 (same). In any event, the Court need not decide the choice-of-law question because the relevant tort principles are substantially the same under Maryland and Texas law.

In both states, the elements of negligence are duty, breach, causation, and damages. *Eckhardt v. Qualitest Pharms., Inc.*, 751 F.3d 674, 681 (5th Cir. 2014) (quoting *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)); *Access Funding, LLC v. Linton*, 290 A.3d 112, 143 (Md. 2022) (quoting *Kiriakos v. Phillips*, 139 A.3d 1006, 1016 (2016)). The Court assumes, but does not decide, that Plaintiff has alleged sufficient facts to plausibly establish duty,[4] breach, and damages. As for causation, the standard is proximate cause, which has two components: (1) cause in fact, and (2) foreseeability or legal cognizability. *Jones v. State*, 38 A.3d 333, 352 (Md. 2012) (citing *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009)); *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002) (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

"Causation in fact raises the threshold question of 'whether the defendant's conduct actually produced [the] injury.'" *Sindler v. Litman*, 887 A.2d 97, 110 (Md. Ct. Spec. App. 2005)

---

[4] The Court notes, however, that Plaintiff has identified no case law imposing a duty on research funders to ensure that their grantees conduct their activities safely and responsibly. *See generally* Resp. EcoHealth; Resp. Gov't. Plaintiffs in at least two other cases have similarly failed to identify any such authority under the laws of several states, including Maryland. *Dykes v. Nat'l Insts. Health*, No. 22-cv-774, 2024 WL 958385, at *7–8 (W.D. Mo. Jan. 4, 2024); *Scott v. Casey*, 562 F. Supp. 475, 480 n.7 (N.D. Ga. 1983). But at least one court has allowed an FTCA negligent funding claim to proceed past the motion-to-dismiss stage, though without considering the duty question in any depth. *Orlikow v. United States*, 682 F. Supp. 77, 87 (D.D.C. 1988). Again, the Court does not reach that question here, but instead decides the jurisdictional question on causation, which furnishes a clearer and independently dispositive basis for resolving the Government's Motion. *See Sinochem*, 549 U.S. at 436.

8

(quoting *Wankel v. A & B Contractors, Inc.*, 732 A.2d 333, 349 (Md. Ct. Spec. App. 1999)).  To demonstrate cause in fact, a plaintiff must show that "the [negligent] act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Excel Corp.*, 81 S.W.3d at 820 (quoting *Boys Clubs*, 907 S.W.2d at 477); *accord Sindler*, 887 A.2d at 110–11.  It typically suffices to establish that "the injury would not have occurred in the absence of the defendant's negligent act." *Sindler*, 887 A.2d at 110 (citing *Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970)).

However, this "'but for' test does not resolve situations in which two independent causes concur to bring about an injury, and either cause standing alone would have wrought the identical harm." *Id.* (citing *Yonce v. SmithKline Beecham Clinical Labs., Inc.*, 680 A.2d 569, 575–76 (Ct. Spec. App. Md. 1996)).  In such scenarios, "the actor's conduct is not, strictly speaking, a but for cause, because another force would have caused the harm anyway." *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 345 (Tex. 2014).  Strict application of principles of but for causation "would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result." *Id.* at 344–45 (quoting W. Page Keeton et al., Prosser and Keaton on the Law of Torts § 41 (5th ed. 1984)).  Therefore, in cases with multiple independently sufficient causes, courts ask instead whether the defendant's conduct was "a substantial factor in bringing about the harm." *Sindler*, 887 A.2d at 110 (quoting Restatement (Second) of Torts § 431(a) (Am. L. Inst. 1965)); *accord Bostic*, 439 S.W.3d at 344.

### a. But for cause

As to but for cause, Plaintiff alleges that her husband died after contracting COVID-19, SAC ¶ 20, which was "created" by, SAC ¶ 22, and "leaked" from, the WIV laboratory in Wuhan, China, SAC ¶ 13.  Plaintiff thus adequately alleges that if not for research activities undertaken at

9

the WIV laboratory, COVID-19 would never have existed, and her husband would not have contracted the virus and died. But that only establishes a cause in fact relationship between the decedent's injury and the WIV's actions—not the Government's actions.

The only allegedly negligent act performed by the Government is its decision to provide money to the WIV without ensuring that the WIV was using that money to conduct research responsibly. SAC ¶¶ 18–19 (alleging the Government "negligently and carelessly funded monies to the [WIV] which they had no supervision nor control over"). Plaintiff has not alleged that without Government funding, the WIV would have lacked the means to conduct the gain-of-function research that allegedly led to the creation and proliferation of COVID-19. *See generally* SAC. Nor has Plaintiff alleged that the Government's funding alone would have been sufficient to finance the WIV's gain-of-function research. *See generally id.*

And it is not plausible to infer as much from Plaintiff's other allegations. Plaintiff alleges that the Government provided the WIV with about $826,000 between 2014 and 2019, including a mere $76,000 in 2019. SAC ¶ 17. Plaintiff offers no allegations about the WIV's overall budget or any of its other funders. *See generally* SAC. Even drawing every reasonable inference in Plaintiff's favor, it would be implausible to conclude that this relatively small sum of money was either sufficient or necessary to support the WIV's gain-of-function research. Rather, a close reading of Plaintiff's allegations undermines the notion that the WIV needed the Government funding at issue to perform that research. Plaintiff alleges that the Government knew or should have known the WIV was conducting coronavirus gain-of-function research "[a]t the time" it provided funding. SAC ¶ 18(a). As the Government persuasively argues, Gov't's Mot. 18, this allegation appears to assert that the WIV's coronavirus gain-of-function research was already ongoing before the Government ever supplied funding.

In sum, Plaintiff has not established that any negligence in approving funding to the WIV was a but for cause of the decedent's injury. *See Sindler*, 887 A.2d at 110. Therefore, the Court need not reach the substantial factor question. *See id.*; *Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 158 (Tex. 2022) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)) (holding cause-in fact requires demonstrating both "components": "substantial factor" and "but for" causation). Plaintiff has not plausibly alleged causation, an essential element of her FTCA negligence against the Government. Accordingly, the Government's Motion is granted, and Plaintiff's claim against the Government is dismissed for lack of subject-matter jurisdiction and failure to state a claim. *See Brownback*, 592 U.S. at 217–18.

The conclusion that Plaintiff has failed to plausibly allege causation against the Government applies with equal force to Plaintiff's negligence claim against EcoHealth because both claims are predicated on Defendants' respective approvals of the same small pot of grant money to the WIV. *See* SAC ¶ 17. Accordingly, EcoHealth's Motion is also granted, and Plaintiff's claim against EcoHealth is dismissed for failure to state a claim. However, in light of the Court's obligation to consider jurisdiction before the merits, this failure-to-state-a-claim holding is but an alternative to the following jurisdictional dismissal.

### 2. The Court lacks personal jurisdiction over Plaintiff's claim against EcoHealth.

EcoHealth's only jurisdictional argument is that the Court lacks personal jurisdiction over Plaintiff's negligence claim against it. Mot. 8–13. The Court has "personal jurisdiction if the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citing *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th

Cir. 2018)). "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Id.* (citing *Sangha*, 882 F.3d at 101)

"Personal jurisdiction can be general or specific." *Id.* (internal alteration omitted) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal alteration omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). And corporations are typically only subject to general personal jurisdiction in the forums where they are incorporated and host their principal places of business. *Id*. at 137–39 & n.19.

By contrast, courts may exercise specific personal jurisdiction over a foreign defendant only if a lawsuit arises out of or relates to the defendant's contacts with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 262 (2017) (collecting cases). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). As a result, "'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id*. (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. at 264 (citing *Goodyear*, 564 U.S. at 931 n.6).

As to general jurisdiction, Plaintiff alleges that EcoHealth is a New York entity, SAC ¶ 2, and makes no allegations about its principal place of business, *see generally* SAC.  Nor does Plaintiff allege or argue that EcoHealth's dealings in Texas are so extensive as to make it essentially at home in this State.  *See* Resp. EcoHealth 11–13 (arguing only that EcoHealth "has sufficient minimum contacts" to warrant the exercise of specific personal jurisdiction in Texas). Therefore, it appears undisputed that the Court cannot exercise personal jurisdiction over EcoHealth under a theory of general jurisdiction.

Turning to specific jurisdiction, Plaintiff alleges that EcoHealth and its employees have funded and participated in a variety of scientific research activities—including coronavirus-related research—in partnership with researchers from Texas.  Resp. EcoHealth 11–13.  But "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear*, 564 U.S. at 919 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).  A defendant's "unconnected activities in the State" cannot provide a basis for specific jurisdiction.  *Bristol-Myers Squibb*, 582 U.S. at 264 (citing *Goodyear*, 564 U.S. at 931 n.6).  Plaintiff does not allege that EcoHealth collaborated with any Texas scientists on the decision to allocate the funds that form the basis for this controversy to the WIV.  *See* Resp. EcoHealth 11–13.  And EcoHealth's other associations with Texas researchers are irrelevant to specific jurisdiction.  *See Bristol-Myers Squibb*, 582 U.S. at 264.

The only connection alleged between the parties' dispute and the State of Texas is that Plaintiff's husband contracted COVID-19 and died in Texas.  Resp. EcoHealth 17.  But the Fifth Circuit has "expressly declined to allow jurisdiction for even an intentional tort[, much less negligence,] where the only jurisdictional basis is the alleged harm to a Texas resident."

13

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001)). Simply put, "mere injury to a forum resident is not a sufficient connection to the forum." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 496–97 (5th Cir. 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). EcoHealth is not alleged to have committed any negligent or otherwise wrongful acts within Texas. That is, "although [EcoHealth's] allegedly tortious conduct may have *affected* [Plaintiff's husband] in Texas, none of this conduct *occurred* in Texas." *Id.* at 497 (citing *Walden*, 571 U.S. at 288–89). In sum, Plaintiff has failed to allege sufficient minimum contacts for this Court to exercise specific personal jurisdiction over EcoHealth. Therefore, EcoHealth's Motion is granted, and Plaintiff's claims against EcoHealth are dismissed for lack of personal jurisdiction.

### III.    CONCLUSION

The Court does not minimize the tragic loss of Plaintiff's husband, nor her concerns about the safety of publicly funded research. Nevertheless, for the foregoing reasons, the Court lacks jurisdiction to hear this case.

Accordingly, the Government's Motion, ECF No. 38, is **GRANTED**. Plaintiff's claims against NIH, NIAID, and the United States are **DISMISSED** for lack of subject-matter jurisdiction and failure to state a claim.

**IT IS FURTHER ORDERED** that EcoHealth's Motion, ECF No. 31, is **GRANTED**. Plaintiff's claims against EcoHealth are **DISMISSED** for lack of personal jurisdiction and failure to state a claim.

The Clerk shall close the case.

**SO ORDERED.**

SIGNED this 14th day of May, 2024.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE